Lendina BARUSHI, Appellant

v.

ATTORNEY GENERAL OF the UNITED STATES; Michael Garcia, Assistance Secretary, Department of Homeland Security–Bureau of Immigration and Customs Enforcement; James Johnston, District Director Bureau of Immigration and Customs Enforcement; Bureau of Immigration and Customs Enforcement.

No. 06–1765.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 25, 2007.

Filed: Oct. 22, 2007.

Aslan T. Soobzokov, Paterson, NJ, for Appellant.

Peter G. O'Malley, Office of United States Attorney, Newark, NJ, for Appellees.

Before: McKEE, BARRY, and FISHER, Circuit Judges.

OPINION

BARRY, Circuit Judge.

Appellant Lendina Barushi appeals the District Court's grant of summary judgment in favor of appellees and its order denying her motion for reconsideration. We will remand for further proceedings.

## I.

Because we write only for the parties, familiarity with the facts is presumed, and we set forth only those facts that are relevant to our analysis.

Barushi, a citizen of Albania, entered the United States without inspection on July 7, 1991. Barushi, now 51 years old, claims that on November 20, 1991 she married Emin Alliu, also a citizen of Albania living in the United States. According to Barushi, although she and Alliu were both physically present in the United States on the date of their marriage ceremony, the ceremony took place in Albania, with Barushi and Alliu participating via telephone. Barushi claims that the couple did not marry in the United States because they wanted the ceremony to include family members in Albania.

On June 24, 1997 Alliu applied for asylum, listing "Lendina Barushi" as his "spouse." Asylum was granted on March 24, 1998. On May 22, 1998, Alliu filed a Refugee/Asylee Relative Petition with the Immigration and Naturalization Service ("INS")[1] seeking to obtain derivative asylee status for Barushi. Attached to Alliu's petition were several documents, including a marriage certificate purportedly from Tirana City Hall in Albania, dated April 4, 1998, confirming that Barushi and Alliu were married.

On November 25, 1998, the INS informed Alliu that it was "in possession of adverse information" relating to his petition. Specifically, the INS stated that "in her previous immigration matters, Lendina Barushi consistently claimed that she was single and had not previously been married." (A.R. 10.) The INS requested that Alliu provide additional documentation confirming the validity of the marriage, the date of the marriage, and "[a]n explanation as to why you did not get married in the United States when you were both living here, and as to why you instead registered your marriage in Albania through your fathers." (A.R. 10–11.)

On December 22, 1998, Alliu submitted a written response to the INS, attaching several documents, including two letters purportedly from Tirana City Hall confirming the validity of the marriage under Albanian law and stating that the date of the marriage was November 20, 1991. Alliu explained that the ceremony took place in Albania because the couple wanted to involve their respective families, and "all family members were living in Albania." (A.R. 26.)

On May 11, 1999, the INS informed Alliu that his petition was denied because he "failed to respond to the Service's notice of intent to deny and to submit the requested additional evidence." (A.R. 12–13.) Although it certainly appears that Alliu had responded to the INS's request for additional information, it was not until November 26, 2004 that he moved to reopen the denial of his petition. On March 8, 2005, the United States Citizenship and Immigration Services ("USCIS") denied Alliu's motion to reopen because the "motion was received untimely and you have given no excusable reason for the delay." (A.R. 20.)

Meanwhile, on November 18, 1999, Barushi filed an application with the INS to adjust her status to permanent resident, identifying herself in the application as an asylee. On September 27, 2004, the application was denied by USCIS because she failed to establish that the required Refu-

1. As of March 1, 2003, INS's responsibilities were transferred to the Department of Homeland Security ("DHS"). We will use "INS" to refer to the pre-March 1, 2003 events in which that agency was involved.

gee/Asylee Relative Petition had been approved. Barushi's motion for reopening or reconsideration was denied on January 14, 2005.

On three separate occasions—July 14, 1998, October 5, 2000 and December 30, 2003—Barushi filed applications with, as relevant, either the INS or the USCIS for travel documents, each time identifying herself as an asylee. On each occasion, the application was denied because Barushi failed to establish that she held valid asylee status. Barushi also claims to have filed applications for employment authorization. Each of those applications was denied.

## II.

On May 25, 2005, Barushi filed a complaint in the United States District Court for the District of New Jersey, challenging the denial of Alliu's petition and of her applications to adjust status, for travel documents and for employment authorization. She also petitioned the District Court for a writ of mandamus directing appellees to process those applications under 5 U.S.C. § 551 et seq. and 28 U.S.C. § 1361.

Appellees moved to dismiss for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment. On September 22, 2005, the District Court granted appellees' motion for summary judgment. The Court held that the decision of the INS to deny Alliu's petition was supported by substantial evidence and was not arbitrary and capricious. The Court further held that the denial of Barushi's various applications was not arbitrary and capricious because the benefits sought in those applications were contingent upon Barushi having asylee status. Finally, the District Court held that, because the decision as to whether to grant relief on Alliu's petition on behalf of

Barushi was discretionary, relief by way of mandamus was inappropriate. Barushi's motion for reconsideration was denied, and she appealed.

## III.

This brief summary of the more important events in this more than ten year old saga cannot begin to convey the confusion, the delays, and the errors that have affected, if not wholly infected, the proceedings before the INS, the USCIS, and the District Court. The responsibility for this confusion and these delays and errors must be placed at the feet of all involved—the agencies as well as Alliu, Barushi, and their counsel.

We cite but a few examples. Barushi applied for asylum on March 22, 1994 and not until four years later, i.e. on March 18, 1998, was she advised by the INS that it "regret[ted]" to inform her that a decision had not been reached in her case "due either to a staffing change, or procedural changes in the processing of files." P.A. 15. The INS indicated its "interest[ ]" in now timely responding to her request for asylum. The INS did not, however, have to leap to decision because Barushi withdrew her request for asylum when, the following week, Alliu was granted asylum and shortly thereafter filed the Refugee/Asylee Relative Petition on behalf of his "spouse," "Lendina Barushi." Alliu's December 1998 response to the INS's request for additional documentation as to that petition, however, somehow disappeared or was not received, and counsel's letter in March 1999 asking the INS if it required any information in addition to the information he had provided (and he enclosed a copy of his December 1998 response) was followed in short order by the denial of the petition for failure to respond. Meanwhile, Barushi had moved to adjust her status to permanent resident. Her file

was inexplicably transferred from Lyndhurst to Newark to Lyndhurst to Newark to Vermont and finally to Nebraska, and much confusion ensued. The moving around of her file with the resulting confusion was, no doubt, a reason if not *the* reason why it took almost five years to deny her application to adjust status.

On the other hand, Alliu waited almost five years to reopen the Refugee/Asylee Relative Petition which had, apparently, been wrongly denied. Moreover, it seems that Barushi's various applications described her as an asylee, when she was not, clearly adding to the delay and confusion in this case. And, importantly, now—only now—does she come forward with information that over these many years she could have presented to the then-relevant agency or to the District Court, but did not—evidence that certainly appears to be the corroboration that the District Court was seeking to establish that Barushi was married to Alliu on the date he was granted asylum, the critical issue in the years of proceedings that preceded this point. That evidence, *i.e.* Alliu's asylum application listing her as his wife, joint federal income tax returns predating any date on which there was any reason to question the date of the marriage, and witnesses to the telephonic marriage ceremony, we are now being asked to consider in the first instance.

We are not factfinders. Nor is it for us to decide, as an initial matter, whether the failure to have submitted the proffered evidence at an earlier time should now bar relief. Rather, we leave it to the District Court to decide whether, in light of the torturous history of this case, the evidence should now be considered and, if so, whether relief should be granted if, of course, another resolution is not otherwise reached.